IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>TRISTIN REYES RIOJAS (01) | NO. 2:25-CR-046-Z (01) |

## FACTUAL RESUME

In support of Tristin Reyes Riojas's plea of guilty to the offense in Count One of the indictment, Riojas, the defendant, Michael King, the defendant's attorney, and the United States of America (the government) stipulate and agree to the following:

## ELEMENTS OF THE OFFENSE

To prove the offense alleged in Count One of the indictment, charging a violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(A)(viii), that is, Conspiracy to Distribute and Possess with Intent to Distribute 500 Grams or More of Methamphetamine, the government must prove each of the following elements beyond a reasonable doubt:[1]

*First.*  That the defendant and at least one other person made an agreement to commit the crime of distribution or possession with intent to distribute methamphetamine, as charged in the indictment;

*Second.*  That the defendant knew the purpose of the agreement and joined in it willfully, that is, with the intent to further the unlawful purpose;

*Third.*  That one of the conspirators during the existence of the conspiracy knowingly committed at least one of the overt acts described in the indictment, in order to accomplish some object or purpose of the conspiracy;

---

[1] Fifth Circuit Pattern Jury Instruction 2.15A (5th Cir. 2024).

Tristin Reyes Riojas
Factual Resume—Page 1

> *Fourth.* That the overall scope of the conspiracy involved at least 500 grams of a mixture and substance containing a detectable amount of methamphetamine;
>
> *Fifth.* That the defendant knew or reasonably should have known that the scope of the conspiracy involved at least 500 grams of a mixture and substance containing a detectable amount of methamphetamine.

The overt act need not be of a criminal nature so long as it is done in furtherance of the conspiracy.

One may become a member of a conspiracy without knowing all the details of the unlawful scheme or the identities of all the other alleged conspirators. If a defendant understands the unlawful nature of a plan or scheme and knowingly and intentionally joins in that plan or scheme on one occasion, that is sufficient to convict him or her for conspiracy even though the defendant had not participated before and even though the defendant played only a minor part.

The government does not need to prove that the alleged conspirators entered into any formal agreement, or that they directly stated between themselves all the details of the scheme. Likewise, the government does not need to prove that all of the details of the scheme alleged in the indictment were actually agreed upon or carried out. Nor must it prove that all of the persons alleged to have been members of the conspiracy were such, or that the alleged conspirators actually succeeded in accomplishing their unlawful objectives.

Mere presence at the scene of an event, even with knowledge that a crime is being committed, or the mere fact that certain persons may have associated with each other and may have assembled together and discussed common aims and interests, does not necessarily establish proof of the existence of a conspiracy. Also, a person who has no knowledge of a conspiracy, but who happens to act in a way which advances some purpose of a conspiracy, does not thereby become a conspirator.

To prove the offense of distribution or possession with intent to distribute 500 grams of more of methamphetamine, the government must prove each of the following elements beyond a reasonable doubt:[2]

> *First.* That the defendant knowingly distributed or possessed a controlled substance;

---

[2] Fifth Circuit Pattern Jury Instruction 2.95 (5th Cir. 2024); *United States v. Ambriz*, 727 F.3d 378, 382-84 (5th Cir. 2013).

**Tristin Reyes Riojas**
**Factual Resume—Page 2**

*Second.*   That the substance was in fact methamphetamine;

*Third.*   That the defendant possessed the substance with the intent to distribute it; and

*Fourth.*   That the quantity of the substance was at least 500 grams or more of methamphetamine.

## STIPULATED FACTS

1. Beginning on or about a date unknown and continuing until on or about April 14, 2025, in the Amarillo Division of the Northern District of Texas, and elsewhere, Tristin Reyes Riojas, defendant, did knowingly and intentionally combine, conspire, confederate, and agree with persons known and unknown to commit an offense against the United States, that is, to knowingly and intentionally distribute or possess with intent to distribute 500 grams or more a mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A)(viii), all in violation of Title 21, United States Code, Section 846.

2. On February 1, 2025, an Amarillo Police Department (APD) officer conducted a traffic stop with Casiano Agustin in the 300 block of E. Bonita Avenue, Amarillo, Texas. During a probable cause search of the vehicle, officers located a backpack in the back seat floorboard that contained four zip top baggies of off-white crystalline substance. The two larger bags of methamphetamine were tested by the Texas Department of Public Safety (DPS) laboratory and found to be 150.02 grams and 64.53 grams of methamphetamine. During an interview, Agustin told officers that he possessed

the methamphetamine located inside of his vehicle. Agustin also admitted to distributing methamphetamine to approximately seven different people. He stated that he had been receiving methamphetamine for distribution from Tristin Riojas for a couple of months.

3. On February 11, 2025, APD officers conducted a traffic stop of a vehicle driven by Tristin Riojas. During an interview with officers, Riojas admitted to distributing ounce quantities of methamphetamine.

4. On April 8, 2025, Amarillo Police Department officers executed a search warrant at the residence of Kristina Ramos and Kaiden Galaviz, located at 2500 S. Spring Street #113, Amarillo, Texas. Galaviz was stopped after being observed driving away from the apartment and was found in possession of approximately 113.5 gross grams of suspected methamphetamine. During an interview, Galaviz admitted that he was being supplied methamphetamine by Tristin Riojas.

5. APD officers conducted an interview with Ramos. During the interview, Ramos admitted to distributing methamphetamine. Ramos identified Riojas as her methamphetamine source of supply.

6. On April 12, 2025, members of the Amarillo Police Department officers conducted surveillance of a vehicle identified as being driven by Tristin Riojas, which was parked in front of 1413 N. Washington Street, Amarillo, Texas. At approximately 6:00 p.m., an officer observed Riojas walk out of the residence and get into the driver's seat of the vehicle. The officer observed Riojas fail to signal intent from a parked position prior to leaving the curb, which is a violation of Texas Transportation Code.

7. An APD officer attempted to conduct a traffic stop with Riojas at the intersection of Broadway Street and W. Studebaker Street in Amarillo, Texas. Riojas failed to yield for the traffic stop, accelerated, and started evading officers. Riojas traveled at a high rate of speed through a residential area. Eventually, Riojas crashed into a pipe fence surrounding a horse enclosure. An officer approached the passenger's side of Riojas's vehicle and observed suspected methamphetamine spilled over the front passenger's seat, on top of Riojas, and around the driver's seat where Riojas was sitting. The officer also observed a black Canik 9mm handgun, serial number T6472-23CM 06643, on the front passenger floorboard.

8. Officers searched the vehicle and surrounding area and located additional methamphetamine. The methamphetamine was spilled on both the inside and outside of the vehicle. During the search of the vehicle and surrounding area, officers located: (1) a baggie containing suspected methamphetamine with an approximate weight of 29.7 gross grams located in the cup holder; (2) approximately 68 gross grams of loose off-white crystalline substance that was collected from throughout the vehicle; a baggie of suspected methamphetamine with an approximate weight of 61.98 gross grams located on the ground inside of the horse pen next to the vehicle; approximately 23.59 gross grams of suspected methamphetamine lying on the ground in the horse pen next to the vehicle; two cell phones; and a credit card under the name of Whitney Gonzalez.

9. On April 14, 2025, APD officers learned that Whitney Gonzalez left a message with the APD Narcotics Unit regarding Riojas. APD officers arrived at Gonzalez's apartment, located at 4302 S.W. 51st Avenue, to speak with Gonzalez.

Gonzalez told officers that Riojas had additional methamphetamine at her residence that she had hid inside her vehicle. Officer's searched Gonzalez's vehicle and located a lunch style box. The lunch box contained a metallic taped bundle of suspected methamphetamine that had a weight of approximately 536.52 gross grams.

10. On the same date, officers met with Riojas at the Potter County Detention Center. An officer read Riojas his *Miranda* warnings. Riojas waived his rights and agreed to speak with officers. Riojas told officers that he was carrying a gun when he fled from officer's because he owed a $50,000 drug debt for methamphetamine. Officers asked Riojas about the methamphetamine located at Gonzalez's apartment. Riojas admitted to having approximately one pound of methamphetamine at the apartment.

11. On April 15, 2025, an APD officer obtained a search warrant for the cellphones seized from Riojas on April 12, 2025. A review of the phone revealed that Riojas was involved with the distribution of methamphetamine to multiple individuals.

12. The suspected methamphetamine seized on April 12, 2025 was sent to the DEA South Central Laboratory. The DEA Laboratory confirmed that the substance was, in fact, methamphetamine, a Schedule II controlled substance. The substance had a total net weight of 148.5 grams and a purity level of approximately 96-100 percent.

13. The suspected methamphetamine seized on April 14, 2025 was sent to the DEA South Central Laboratory. The DEA Laboratory confirmed that the substance was, in fact, methamphetamine, a Schedule II controlled substance. The substance had a total net weight of 370 grams and a purity level of approximately 98 percent

14. Riojas admits that he and at least one other person made an agreement to commit the crime of distribution or possession with intent to distribute 500 grams or more of methamphetamine, as charged in the indictment. Riojas admits that he knew the purpose of the agreement and joined in it willfully, that is, with the intent to further the unlawful purpose. Riojas admits that during the existence of the conspiracy, he knowingly committed at least one of the overt acts described in the indictment, in order to accomplish some object or purpose of the conspiracy.

15. The defendant agrees that the defendant committed all the essential elements of the offense. This factual resume is not intended to be a complete accounting of all the facts and events related to the offense charged in this case. The limited purpose of this statement of facts is to demonstrate that a factual basis exists to support the defendant's guilty plea to Count One of the indictment.

AGREED TO AND STIPULATED on this 14 day of November, 2025.

NANCY E. LARSON
ACTING UNITED STATES ATTORNEY

_____
Tristin Reyes Riojas
Defendant

_____
Michael King
Attorney for Defendant

_____
ANNA MARIE BELL
Assistant United States Attorney
New Mexico State Bar Number 12501
500 South Taylor Street, Suite 300
Amarillo, Texas 79101-2446
Tel: 806-324-2356
Fax: 806-324-2399
Email: anna.bell@usdoj.gov